IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

Plaintiff,

v.

RUBIO GUALBERTO TZIU-UC,

Defendant.

No. 3:14-cr-00100-HZ-12
No. 3:17-cv-01074-HZ

OPINION & ORDER

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Geoffrey A. Barrow
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

       Attorneys for Plaintiff

/ / /

/ / /

/ / /

1 - OPINION & ORDER

Rubio Gualberto Tzui-Uc
Great Plains Correctional Institution
PO Box 400
Hinton, OK 73047

Defendant Pro Se

HERNANDEZ, District Judge:

On January 27, 2016, a jury found Defendant guilty of conspiring to import, distribute, and possess with intent to distribute methamphetamine and cocaine, and of using communication facilities in furtherance of drug trafficking, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 843, 846, 952, and 960. ECF 1 (indictment), ECF 756 (jury verdict, redacted); ECF 757 (jury verdict, unredacted and filed under seal). On July 6, 2016, Defendant was sentenced to 120 months in custody and five years of supervised release. ECF 828, ECF 829. A Judgment of Conviction was filed on July 7, 2016. ECF 829.

Defendant moves to vacate or correct his sentence under 28 U.S.C. § 2255. ECF 904. He also moves for appointment of counsel. ECF 911. Because Defendant's claims have no merit or are procedurally defaulted, I deny the § 2255 motion. Because the motion and record conclusively show that Defendant is entitled to no relief, no evidentiary hearing is required. Defendant's motion for appointment of counsel is also denied.

## FACTUAL & PROCEDURAL BACKGROUND

In a March 5, 2014 indictment, the grand jury charged Defendant, along with several others, with conspiring to import, to distribute, and to possess with intent to distribute, heroin, cocaine, and methamphetamine, beginning on or before July 2013 and continuing through the date of the indictment. ECF 1. The indictment also charged the use of communication facilities

in furtherance of the drug trafficking. *Id.*

The indictment was the result of a several-months investigation into a drug trafficking organization managed by co-defendant Juan Orozco-Lopez. The investigation included court-authorized wire surveillance over twelve cell phones, the use of a confidential source (CS), and a controlled buy. Several searches authorized by United States Magistrate Judges were conducted. Relevant facts regarding the controlled buy and the searches are detailed in my July 16, 2015 Opinion & Order denying Defendant's motion to suppress. ECF 541. These facts were essentially unchanged at trial.

Defendant was arraigned on March 12, 2014, and attorney Tom Coan was appointed to represent him. ECF 45. Several months later, Coan moved to withdraw. At a hearing on November 5, 2015, I granted the motion. ECF 303. On November 6, 2014, attorney Todd Bofferding was appointed to represent Defendant. ECF 304. Several months after his appointment, Bofferding moved to withdraw. On March 30, 2015, I conducted a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975), granted the motion to withdraw, and allowed Defendant to proceed pro se. ECF 419. At Defendant's request, I appointed Bofferding as Defendant's standby lawyer. *Id.*

Both Defendant himself and Bofferding filed separate motions to suppress in April and June 2015. ECF 433, 470. During this time, other motions filed by Defendant were resolved. ECF 458 (finding motion for legal research resolved with standby counsel and investigator; terminating motion for settlement conference as court lacked authority to order one). On July 8, 2015, I conducted an evidentiary hearing and heard oral argument on the motions to suppress. ECF 532. I also resolved motions related to discovery. *Id.*; ECF 533. As indicated above, on

July 16, 2015, I denied the motion to suppress in a written Opinion.  ECF 541.

During the evidentiary hearing on the suppression motion, Defendant decided to have Bofferding represent him again.  ECF 532; *see also* ECF 646 (July 6, 2015 Transcript). Bofferding represented Defendant throughout trial.[1]  However, after trial, Bofferding again moved to withdraw.  ECF 782.  After another *Faretta* hearing, I granted the motion and Defendant proceeded pro se throughout sentencing.  ECF 798.

After the Judgment of Conviction was filed, Defendant filed a notice of appeal.  ECF 832. Counsel was appointed to assist with the appeal.  ECF 850, 854.  On December 8, 2016, the Ninth Circuit granted Defendant's voluntary motion to dismiss the appeal.  ECF 879.

STANDARDS

I.  Section 2255 Motion Standards

Under § 2255, a federal prisoner in custody may move the sentencing court to vacate, set aside, or correct a sentence on the basis that the sentence violates the Constitution or the laws of the United States.  28 U.S.C. § 2255(a); *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (citing *Davis v. United States*, 417 U.S. 333 (1974)).

The petitioner must demonstrate that an error of constitutional magnitude had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht's* harmless error standard applies to habeas cases

---

[1]  During trial, on January 27, 2016, Defendant attempted to fire Bofferding and represent himself.  ECF 861 (Jan. 27, 2016 Transcript).  Defendant complained that Bofferding was not doing what Defendant requested.  *Id.*  One issue involved the drug exhibits.  *Id.*  I denied Defendant's request and Bofferding remained as counsel throughout trial.

under section 2255, just as it does to those under section 2254.").

A district court must grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). In determining whether a § 2255 motion requires a hearing, "the standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *Withers*, 638 F.3d at 1062 (brackets and internal quotation marks omitted). A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062–63 (quoting *United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984)*); *see United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980)* (conclusory statements in a § 2255 motion are insufficient to require a hearing).

Habeas review is not an alternative to direct appeal. *Bousley v. United States, 523 U.S. 614, 621 (1998)* ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotation marks omitted). Absent a showing of cause and prejudice, a habeas petitioner procedurally defaults all claims that were not raised in his direct appeal, other than claims asserting ineffective assistance of counsel. *Massaro v. United States, 538 U.S. 500, 504 (2003)*. "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady, 456 U.S. 152, 167-68 (1982)*. To demonstrate "cause," the defendant must establish that "'some objective factor external to the defense impeded his adherence to the procedural rule.'" *United States v. Skurdal, 341 F.3d 921, 925 (9th Cir.*

2003) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  For "prejudice," the defendant

must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they

worked to his *actual* and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions."  *Frady*, 456 U.S. at 170.  The district court does not need to address

both prongs if the defendant fails to satisfy one.  *Id.* at 168.

A defendant who fails to show cause and prejudice to excuse a procedural default, may

still obtain review on a § 2255 collateral attack by demonstrating the likelihood of his actual

innocence.  *United States v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007).  To establish actual

innocence, the defendant must demonstrate that in light of all the evidence, it is more likely than

not that no reasonable juror would have convicted him.  *Alaimalo v. United States*, 645 F.3d

1042, 1047 (9th Cir. 2011); *see also Bousley*, 523 U.S. at 623 ("'actual innocence' means factual

innocence, not mere legal insufficiency").

## II.  Ineffective Assistance of Counsel Standards

Claims of ineffective assistance of counsel provide an exception to the procedural default

rule.  *Massaro*, 538 U.S. at 504.  Courts use a two-part test to determine whether a defendant has

received constitutionally deficient assistance of counsel.  *Premo v. Moore*, 562 U.S. 115, 121

(2011).  Under this test, a defendant must prove that counsel's assistance was deficient *and* that

the deficient performance prejudiced the defense.  *Id.*; *see also Schurz v. Ryan*, 730 F.3d 812,

815 (9th Cir. 2013) (Defendant must show not only that counsel's performance was deficient but

that the deficient performance prejudiced the defendant).

To prove the deficiency of counsel's performance, the defendant must show counsel made

errors so serious that his "'representation fell below an objective standard of reasonableness'"

under prevailing professional norms.  *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance.  *Strickland*, 466 U.S. at 688.

In assessing whether counsel's performance was deficient, courts must "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and make every effort 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"  *Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).  Ultimately the defendant's "burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"  *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

"To satisfy the prejudice prong under *Strickland*, a defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Saesee v. McDonald*, 725 F.3d 1045, 1048 (9th Cir. 2013) (quoting *Strickland*, 466 U.S. at 694).  "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  *Saesee*, 725 F.3d at 1048 (quoting *Strickland*, 466 U.S. at 695).

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant[.]"  *Strickland*, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*

/ / /

DISCUSSION

In his § 2255 motion, Defendant raises nine grounds for relief.  Ground One alleges that he received ineffective assistance of counsel because counsel did not challenge what Defendant believes was "fabricated evidence."  Def.'s § 2255 Motion 3, 13-14.  In Ground Nine, he alleges that his counsel failed to present exculpatory evidence, failed to object to the unlawful admission of fabricated evidence, failed to timely request appropriate jury instructions, failed to timely object to insufficient instructions, failed to object to improper final argument by the prosecution, and failed to seek a curative instruction for that improper argument.  *Id.* at 9, 20.

The remaining grounds raise non-ineffective assistance claims.  In Grounds Two and Five, Defendant raises prosecutorial misconduct issues.  He asserts that the Government violated his constitutional rights by knowingly using fabricated evidence and false testimony.  *Id.* at 4, 6, 14-15, 17-18.  In Grounds Three and Four, Defendant contends that the Government failed to disclose materials pursuant *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), and that the Government hid fabricated evidence.  *Id.* at 5-7, 15-17.  In Ground Six, Defendant argues that the Government violated his civil rights by proceeding to trial with fabricated evidence.  *Id.* at 7-8, 18.  In Ground Seven, Defendant argues that the Court violated his civil rights by failing to dismiss the case.  *Id.* at 8, 18-19.  Finally, in Ground Eight, he asserts that the Government failed to protect him from harm.  *Id.* at 9, 19-20.

Defendant acknowledges he did not raise any of these issues on direct appeal.  He contends that his appellate counsel was ineffective.

I.  Ineffective Assistance Claims

A.  Trial Counsel

1.  Ground One - Failure to Challenge Fabricated Evidence

After the motion to suppress and other motions were resolved in July 2015, Defendant sought to have four drug exhibits reweighed and retested by his own expert.  ECF 535, 588.  The Government did not oppose the request as long as Drug Enforcement Administration (DEA) safekeeping procedures were utilized.  ECF 597.  I agreed with the Government on that issue and on September 29, 2015, Orders consistent with the Government's position and allowing a defense expert to retest and reweigh the four drug exhibits, were filed.  ECF 612, 613.  At this time, trial was to start November 16, 2015.  ECF 542.  In late October 2015, Defendant moved to reset the trial due to a number of issues, one of which concerned his drug testing expert.  ECF 640, 641.  On November 2, 2015, I reset the trial to December 1, 2015.  ECF 652.  New Orders, the same as those entered September 29, 2015 except for the name of Defendant's drug testing expert, were promptly filed, allowing Defendant's new expert to retest and reweigh the four drug exhibits, identified as DEA Exhibits 6, 7, 500, and 502.  ECF 653, 655.

A pretrial conference was held on November 30, 2015.  ECF 702.  The next morning, the day trial was to begin and before the venire panel was brought into the courtroom, the attorneys alerted me to an issue concerning the lab results from Defendant's drug expert.  *See* ECF 889 (Dec. 1, 2015 Transcript).  As outlined by the Government, the test results from the reweigh were uncontroversial.  *Id.* at 3; *see also id.* at 4 (defense counsel agreed that the weight was not an issue).  However, the results from the retest, which analyzed the nature of each substance and its purity, were surprising because the nature and purity of the substances did not align with the Government's test results.  *Id.* at 3-5.  Defendant had planned to stipulate to the drug exhibits provided the lab results from his independent testing were consistent with the Government's lab

test results.  *Id.*  But, with the discrepancy, Defendant could not enter that stipulation.  *Id.*  And, because defense counsel had received the results after 5:00 p.m. the day before, he had not yet spoken to his toxicologist.  *Id.* at 6-7.  Court recessed to allow defense counsel to talk to Defendant and to the toxicologist.  *Id.* at 6-8.

The hearing recommenced with Defendant present.  *Id.* at 8.  Defense counsel had met with Defendant and explained the situation, but had been unable to contact his toxicologist.  *Id.* Because the venire panel was ready and waiting, I explored alternatives to resetting the trial with the parties.  *Id.* at 9.  I also noted that one obvious reason for the discrepancy was that Defendant's toxicologist had simply failed to test for cocaine.  *Id.*  After another recess in which the parties discussed options, both the Government and Defendant agreed that resetting the trial was appropriate.  Trial was then reset for January 26, 2016.  *Id.* at 16.

In an August 31, 2017 Declaration, Bofferding states that on November 30, 2015, he received lab results from the independent laboratory which were inconsistent with the DEA's analysis.  Bofferding Decl. ¶ 3; ECF 913-1.  The lab report he received was two pages and showed four samples along with the results.  *Id.*; ECF 913-2.  Sample A, which was DEA Exhibit 6, had a net weight of 28.4 grams and was identified as methamphetamine, with a purity of 2.1%.  *Id.*  Sample B, which was DEA Exhibit 7, had a net weight of 1,322.5 grams, was identified as methamphetamine, and had a purity of 63.5%.  *Id.*  Sample C, DEA Exhibit 500, had a net weight of 7.2 grams, was identified as methamphetamine, and had a purity of 74%.  *Id.*  Sample D, DEA Exhibit 502, had a net weight of 23.1 grams, was identified as methamphetamine, and had a purity of 1.1%.  *Id.*

Bofferding explains that what I had suspected was correct:  The "independent laboratory

failed to test the controlled substances for the presence of cocaine." Bofferding Decl. ¶ 3. The

independent laboratory retested the substances and on December 13, 2015, Bofferding received

an updated forensic report from the lab. *Id.* at ¶ 5. That report identified Samples A and D, DEA

Exhibits 6 and 502 respectively, as cocaine. ECF 913-3. The net weights of those samples were

the same but the purities were now 65.9% for Sample A and 76% for Sample D. The updated

report was consistent with the Government's testing analysis. Bofferding Decl. at ¶ 5. As a

result, Defendant and the Government entered into a stipulation regarding the four controlled

substances at issue. *Id.* at ¶¶ 5, 6. That stipulation identified the exhibits by both DEA number

and trial exhibit number. ECF 739, ECF 913-4. In addition to stipulating to the testing

procedures, the parties stipulated that (1) DEA Exhibit 6/ Government Trial Exhibit 30 was a bag

of cocaine with a net weight of more than 28 grams without packaging; (2) DEA Exhibit

7/Government Trial Exhibit 32, was a bag of methamphetamine with a net weight of more than

1,322 grams without packaging and that the amount of actual or pure methamphetamine was

more than 1,040 grams; (3) DEA Exhibit 500/ Government Trial Exhibit 34, was a bag of

methamphetamine with a net weight of more than 7 grams without packaging and the amount of

actual or pure methamphetamine was more than 6 grams; and (4) DEA Exhibit 502/Government

Trial Exhibit 36, was a bag of cocaine with a net weight of more than 23 grams without

packaging. *Id.*

      The drugs and their accompanying lab analyses were admitted at trial. *See* ECF 754

(Clerk's List of Exhibits & Witnesses). The stipulation regarding the drugs, their weight, and

their purities, was read to the jury on the second day of trial, January 27, 2016. ECF 861 at 374-

76. As indicated above, the jury found Defendant guilty. ECF 756, 757. Pursuant to special

questions on the verdict form, the jury determined that the amount of pure or actual methamphetamine involved was 50 grams or more, and the amount of cocaine involved was less than 500 grams. The amount of methamphetamine triggered a ten-year mandatory minimum sentence. 21 U.S.C. § 841(b)(1)(A)(viii).

Defendant's ineffective assistance argument is premised on his belief that trial counsel should have challenged "fabricated evidence." A reading of his entire § 2255 motion indicates that his reference is to the drugs themselves or possibly to the stipulation about the drugs. Either way, his contention has no merit. As the recitation of the facts above demonstrates, Defendant had the drugs tested and weighed by an independent forensic lab. While the initial report was incomplete and thus erroneous because the lab had failed to test for the presence of cocaine, the updated lab report produced two weeks later was consistent with the Government's analysis. Defense counsel's stipulation was entirely appropriate. Far from being outside the wide range of professionally competent assistance, defense counsel's conduct was a prudent decision.

Defense counsel has no duty to raise baseless arguments. *E.g.*, *Sanders v. Cullen*, 873 F.3d 778, 815 (9th Cir. 2017) ("'The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.'") (quoting *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982)). Given the second lab report by Defendant's independent testing which was consistent with the DEA's lab tests, Defense counsel could not have presented an expert to challenge the DEA's analysis of the cocaine and methamphetamine in this case. Accordingly, Defendant fails to establish that his counsel's failure to challenge the Government's drug evidence through a defense expert witness or otherwise, fell below an objective standard of reasonableness. Counsel's conduct was not ineffective.

2.  Ground Nine - Other Conduct by Trial Counsel

Defendant raises a host of other alleged errors by trial counsel including that counsel failed to present exculpatory evidence, failed to object to the unlawful admission of fabricated evidence, failed to timely request appropriate jury instructions, failed to timely object to insufficient instructions, failed to object to improper final argument by the prosecution, and failed to seek a curative instruction for that improper argument. The fabricated evidence argument is duplicative of the argument previously addressed and is without merit.

The other arguments are conclusory. With one exception discussed below, Defendant offers no facts identifying what exculpatory evidence he believes defense counsel failed to present. He identifies no jury instructions that defense counsel should have requested. He offers no basis for why he believes the jury instructions were insufficient. He fails to point to what portion of the Government's final argument he contends was improper. Without more, Defendant fails to meet his burden under *Strickland* to establish deficient performance or prejudice. *E.g.*, *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (affirming district court's determination that petitioner's "conclusory suggestions that his trial and state appellate counsel provided ineffective assistance fall far short of stating a valid claim of constitutional violation."); *Knoke v. Oregon*, No. 2:12-CV-01883-AA, 2013 WL 6576049, at *4 (D. Or. Dec. 11, 2013) ("Ineffective assistance of counsel claims . . . must be alleged separately with specificity"); *Thomas v. Nooth*, No. 3:09-CV-803-HZ, 2012 WL 786842, at *6 (D. Or. Mar. 9, 2012) ("Petitioner's conclusory claim that the failure to call witnesses prejudiced him does not establish ineffective assistance of counsel").

In his Reply Memorandum, ECF 929, Defendant cites to a letter from Bofferding in

which Bofferding notes that an expert named James Green concluded that Defendant did not write the drug debt sheets taken from his home. Def.'s Reply. 16; *see also* Attachmt 1 to Def.'s Reply, ECF 929-1 (Five-page report from Green dated October 28, 2016); Def's Ex. 29, ECF 929-1 (Sept. 24, 2015 Letter from Bofferding to Defendant indicating that Green's report was included, noting the conclusion reached by Green, and stating Bofferding's intent to have Green testify at trial). Presumably, Defendant, who did not identify in his initial motion any specific exculpatory evidence that Bofferding failed to present at trial, contends that Bofferding's failure to call Green at trial was ineffective assistance.

This argument is baseless. Green's conclusions were presented to the jury via stipulation. ECF 738 (hereinafter "Green Stip."). In this stipulation, the parties agreed that during the search of Defendant's residence investigators found handwritten drug records, entered into evidence at trial as Government Exhibit 54. Green Stip. ¶ a. The parties further agreed that (1) Green, a forensic document examiner, examined Government Exhibit 54 and compared the handwriting in that exhibit to handwriting samples of Defendant's; (2) if he were called to testify, Green would explain the terms used in the field of handwriting comparison to describe the results of handwriting analysis; (3) that based on his comparison of Government Exhibit 54 to the known examples of Defendant's handwriting, Green concluded that there were indications that Defendant did not write Government Exhibit 54, and (4) because the parties agreed about what Green would say were he called to testify, the parties elected not to call him as a witness. *Id.* ¶¶ b-d. This stipulation was read to the jury on the second day of trial, January 27, 2016. ECF 861 at 380-81. Because Green's opinion was submitted to the trial in this stipulation, Bofferding's failure to call Green as a live witness was not ineffective assistance.

Finally, I carefully examined the record in this case. My review confirms that Defendant's attorney performed within the "wide range of professionally competent assistance" and his representation did not fail to meet an objective standard of reasonableness. Defendant fails to make an adequate showing of ineffective assistance of counsel under the required standards.

B. Appellate Counsel

Defendant faults his appellate counsel for his failure to directly appeal each one of his asserted Grounds for Relief, contending she provided ineffective assistance because she refused to raise "all issues." Def.'s § 2255 Motion 3-10. He offers no facts in support of this conclusory assertion. Again, a vague and conclusory assertion does not support an ineffective assistance claim.

Moreover, the record demonstrates that the claim is not viable. In a November 21, 2016 Motion to Extend Time, Defendant's appellate counsel sought an extension of time to file the opening brief on appeal. *United States v. Tziu-Uc*, Ninth Cir. No. 16-30167, Docket No. 11. There, she included the following information:

> I have read all the documents I have . . . and have identified an issue that is colorable. However, given the client's goals, it may be most appropriate for him to dismiss his appeal, and go directly to the next step in the process, a section 2255 case. I have written him several detailed opinion letters, and we have spoken on the telephone at least 8 times, as recently as today.

> At his request, I have sent him the entire transcript, and many of the documents that were filed in the case, and a print-out of PACER. He has very firm opinions about this case, but his focus is not on the District Court's legal error of a sort that this court could address.

> I believe that he intends to dismiss his appeal. He has a motion to dismiss that I sent him to sign, and I believe I understood him to say that he has signed it

> (or intends to sign it), and send it back to me. Sometimes our conversations are less than straightforward. Nevertheless, I believe in the next two months, and perhaps in a week or two, he will either sign the dismissal, or will affirmatively tell [me] he wants to appeal.

*Id.* The Ninth Circuit granted the motion to extend. *Id.*; Docket No. 12.

On December 5, 2016, Defendant moved to dismiss his appeal. *Id.*; Docket No. 13. Defendant himself and appellate counsel both signed the motion. *Id.* The motion was granted on December 7, 2016, and the appeal was voluntarily dismissed. *Id.*; Docket No. 14; *see also* ECF 879 (copy of Ninth Circuit Order docketed in District Court case).

Contrary to Defendant's conclusory assertion, the record in this case shows that appellate counsel carefully reviewed the trial court record, identified a colorable issue for appeal, communicated extensively with Defendant both by letter and by phone, and advised him about his options. Her failure to pursue claims that were weak or meritless is not deficient performance or prejudicial. *See Poland v. Stewart*, 169 F.3d 573, 587 (9th Cir. 1999) (appellate counsel's failure to raise claims did not amount to cause to excuse petitioner's procedural default); *see also Moormann v. Ryan*, 628 F.3d 1102, 1109–10 (9th Cir. 2010) (failing to raise a meritless issue on appeal is neither deficient performance nor prejudicial); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989) (appellate counsel remains above objective standard of reasonableness when counsel declines to raise a weak issue on appeal).

Defendant fails to establish ineffective assistance by appellate counsel.

/ / /

II.  Remaining Claims

Because Defendant did not directly appeal any of his remaining claims and he cannot

attribute that failure to ineffective appellate counsel, he may bring these claims in his § 2255 motion only if he establishes cause and prejudice as explained above. Otherwise, his claims are procedurally defaulted.

Some of the remaining claims appear to be based on Defendant's assertion that the drug evidence was fabricated or that the drug evidence testimony was false. In Grounds Two and Five, he argues that the Government violated his constitutional rights by knowingly using fabricated evidence and false testimony. In Grounds Six and Seven, he asserts that the Government violated his constitutional rights by proceeding to trial and that the Court violated his civil rights by failing to dismiss the case. Although the precise basis for the asserted violations in Grounds Six and Seven is not clear in Defendant's motion, he may be basing those two claims on the use of allegedly fabricated drug evidence and false testimony. For the reasons explained above, all of the claims based on the drug evidence argument have no merit. Alternatively, these claims are procedurally defaulted. Defendant raised none of these claims on appeal and he has established no cause for failing to raise them.

Grounds Three and Four contend that the Government failed to disclose *Brady* and *Giglio* materials and hid fabricated evidence. Again, in his § 2255 Motion, Defendant fails to identify any specific information the Government suppressed or fabricated. He indicates that he raised the issue at a November 5, 2014 hearing on his prior attorney's motion to withdraw, at his March 30, 2015 *Faretta* hearing, during the December 1, 2015 colloquy when the Court first learned of Defendant's independent lab report of the drug exhibits which was inconsistent with the

Government's laboratory analysis, and during trial.  Def.'s § 2255 Motion 16-17.[2]  He does not, however, cite to what evidence he is referring to in these claims other than repeated references to the "fabricated evidence."  I have reviewed the transcripts of each of these proceedings and find nothing to suggest that the Government failed to provide exculpatory evidence or hid fabricated evidence.

At the November 5, 2014 motion hearing on Coan's motion to withdraw, Defendant asserted that there were a "lot of lies in my case" and that he told Coan to "show that the feds are doing stuff illegally[.]"  ECF 859 (Nov. 5, 2014 Transcript) at 5.  Nothing more notable was said or discussed.

At the March 30, 2015 *Faretta* hearing, Defendant again asserted that there were "so many lies" and that he wanted to go to trial.  ECF 645 (Mar. 30, 2015 Transcript) at 4.  He implied that Bofferding was unwilling to take the case to trial and that the only way to get away from all the lies and the "sloppy things the DA and the federal did to me" was to represent himself.  *Id.*  After making clear that Bofferding would take the case to trial if that was Defendant's desire, and counseling Defendant about why firing Bofferding was a poor decision, Defendant continued to request that he represent himself.  *Id.* at 4-7.  The Government explained the nature of the charges and the possible penalties.  *Id.* at 7-10.  I then explained the dangers and disadvantages of self-representation.  *Id.* at 10-14.  I concluded that Defendant's decision was knowing, voluntary, intelligent, and not made for the purposes of delay.  *Id.* at 14.  Nothing was said about discovery, documents, or evidence.

---

[2]  Pages 15 and 16 of the motion are in the wrong order as evidenced by the paragraph numbering.  I cite to what is effectively page 16 but which is numbered 15.

At the December 1, 2015 discussion about postponing the trial due to the inconsistent independent lab reports, nothing was raised about outstanding discovery requests or evidence other than the four drug samples.  ECF 889 (Dec. 1, 2015 Transcript).  In support of another claim in his § 2255 motion, Defendant quotes from the transcript of the December 1, 2015 proceeding and inserts his contentions that various statements show that the Government was well aware of the "fabricated evidence," that the Court knew Defendant did not deliver any drugs, and that the Government knew it was putting on witnesses who would testify falsely.  Def.'s § 2255 Motion at 15, ¶ 28.  None of the discussion that occurred that morning supports Defendant's contentions.  The portion of the transcript Defendant relies on is the colloquy between the Court and counsel regarding alternatives to delaying the trial.  I suggested various options of having the Court determine the facts necessary for the enhancement or having a separate jury make that determination later.  I asked counsel to consider whether they needed the lab testing reports for the trial.

At one point the discussion went like this:

MR. BOFFERDING:  * * *

    And what I'd like to be able to do is in order to be adequately prepared, I would like us to figure out what's going on with the lab issues and the toxicology, so I've got a firm grasp of what's going on.  If we were to proceed to trial today, quite frankly, I'd be winging it on a couple of different aspects; and that's not fair to Mr. Tziu-Uc.

THE COURT: Well, you'd only be winging it if they brought in anything regarding the weight and the substances from their expert.  If that's not coming in, you're not winging anything.  You're not having to address an issue that you otherwise would have had to.

MR. BOFFERDING: It still gives me pause.

> THE COURT: Of course it does. It should give you pause. That's why I said,
> think about it. I'm just thinking out loud right now. I haven't decided.

Dec. 1, 2015 Transcript at 10-11. According to Defendant, this conversation somehow

establishes that the Government knew the "truth" but still did not dismiss the case. Such an

interpretation is entirely unfounded and not reasonable.

Defendant also points to a statement by the Government's counsel that without a

stipulation, the Government was concerned it could not meet its burden of proof to show that the

drugs were controlled substances. *Id.* at 11-12. While the Government's counsel acknowledged

that my idea of having a bench trial or second jury determination of the weights involved was

"creative," the Government was still concerned about proceeding absent a stipulation as the

parties had contemplated. *Id.* Defendant interprets this part of the discussion as exposing that

counsel for the Government was "well aware about the fabricated evidence" but somehow failed

to act in accordance with unspecified court rules. Def.'s § 2255 Motion at 15. Again,

Defendant's interpretation is irrational and fails to support his contention that the Government

failed to provide *Brady* and *Giglio* materials or hid fabricated evidence.

After the Government's counsel expressed his concerns with proceeding to trial without

the stipulation, the Government's counsel and I continued to discuss the issue:

> THE COURT: Yeah, you have a better case if in fact you have in evidence that the
> substance was in fact an illegal substance, as opposed to them talking about, there
> being hand-to-hand exchanges, and you finding baggies and money in a storage
> unit. I get it.

> MR. BARROW: I assume we could put into evidence - - we could bring the
> substances we found into the courtroom, but I don't know if that would be
> adequate.

*Id.* at 12.

Defendant argues that this exchange shows that I concluded that Defendant did not deliver any drugs and also concluded there was a "big issue" as to whether there were any drugs in the storage unit. Def.'s § 2255 Motion at 15. He also contends that the prosecutor's statement "is clearly referring" to an illegal case proceeding to trial. *Id.* My comments are not capable of any such interpretation. And the meaning ascribed to the prosecutor's statements is just as inconceivable.

Finally, Defendant argues that one more statement by the Government's counsel during this exchange shows that the Government knew it was putting on a witness who would falsely testify. In continuing to explain why the Government desired to set the trial over and wait for the toxicology tests to be redone, the prosecutor explained that the law enforcement witnesses were prepared to testify about the nature of the substances at issue but they would be hampered by the fact that no evidence conclusively identifying the substance would be admitted at trial. *Id.* at 12-13. Again, Defendant's contention that these statements from the prosecutor show that the Government knowingly put on a witness it knew would commit perjury, is baseless.

Defendant's contentions in Grounds Three and Four are conclusory in regard to any *Brady* or *Giglio* material he contends was not produced. None of the proceedings he cites in his motion support his claims. His contentions that the Government hid fabricated evidence are without merit. None of the proceedings he cites in his motion show that the Government hid fabricated evidence. Moreover, he has procedurally defaulted these claims because he failed to raise them on appeal and he establishes no cause for his failure to raise them.

To the extent the basis for his contentions in Grounds Six and Seven in which he argues that the Government and the Court violated his civil rights, is something other than the alleged

fabricated drug evidence or testimony, Defendant fails to assert anything other than conclusory allegations which are insufficient to establish cause and prejudice. Thus, he has procedurally defaulted these claims.

As to Ground Eight, Defendant appears to argue that as a result of the DEA seizure of the methamphetamine from the storage locker, co-conspirators threatened Defendant's life because they suspected Defendant had stolen the drugs. Def.'s § 2255 Motion 19-20. Defendant suggests that his conviction and/or sentence must be set aside because the Government failed to protect him from these threats. This argument is not a basis for habeas relief which is limited to attacks on the legality or duration of confinement. *E.g.*, *Harman v. Summerr*, 878 F. Supp. 1335, 1347 n.15 (C.D. Cal. 1995) ("[T]he Ninth Circuit has made clear that habeas petitions are limited to attacks upon legality or duration of confinement."). Given that the co-conspirators' conduct does not implicate the fact or duration of Defendant's confinement, it is not appropriately raised in this § 2255 motion. At best, this argument raises a question of conditions of "confinement," not the legality or duration of the confinement. Additionally, Defendant has procedurally default this claim by failing to raise it on appeal.

Finally, as noted above, any claim which is procedurally defaulted may still be reviewed on a § 2255 collateral attack if Defendant demonstrates the likelihood of his actual innocence. Defendant fails to show that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. The evidence included, but was not limited to: (1) transcripts of phone calls between Orozco-Lopez and the CS where Orozco-Lopez referred to "Rubio;" (2) a large number of cell phone calls or texts between Defendant and Orozco-Lopez; (3) observation by law enforcement of the car leaving the controlled buy, driving to a residence

and stopping, then driving to the storage unit; (4) identification by law enforcement of Defendant as the driver of the car during the first stop after leaving the controlled buy; (5) observation by law enforcement of Defendant at and then leaving Unit C-58 of the storage unit; and (6) records showing that Defendant was the lessee of the storage unit. Additionally, the evidence included the testimony of three co-defendants and notably, cellphone video and a transcript of a conversation between Defendant and co-defendant Oracio Felix-Zazueta during which Defendant told Felix-Zaxueta that he did not steal the methamphetamine from the storage unit but that he would still pay for half of the drugs "since it was Juan and me doing it, well both are profiting, and both need to, have to answer." I Gov't Trial Ex. 10 at 3.

Other than his attacks directed to fabricated evidence, alleged false testimony, and references to "lies" without specificity, Defendant fails to address the evidence against him. As a result, he fails to make the requisite showing of actual innocence sufficient to overcome the procedural default of his non-ineffective assistance claims.

## III. Certificate of Appealability

Under 28 U.S.C. § 2253, a final order in a § 2255 habeas corpus proceeding may not be appealed unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Slack v. McDaniel*, 529 U.S. 473 (2000), the Supreme Court explained that a certificate of appealability under § 2253(c) is warranted when a habeas prisoner makes "a demonstration that . . . includes a showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."

*Id.* at 483–84 (internal quotation marks omitted).

Defendant does not meet the standard. His claims have no merit or are unquestionably procedurally defaulted with no issues raised regarding actual innocence. Thus, I deny a certificate of appealability.

CONCLUSION

Because the motion and record conclusively show that Defendant is entitled to no relief, I do not conduct an evidentiary hearing and I deny Defendant's motion for appointment of counsel [911]. Defendant's § 2255 motion [904] is denied.

IT IS SO ORDERED.

Dated this ____/____ day of _____Feb_____, 2018

_____
Marco A. Hernandez
United States District Judge